IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

FRANCENE LORRAINE TRUJILLO,

      Plaintiff,

v.                                                                                               No. CV 20-167 CG

ANDREW SAUL,
Commissioner of the
Social Security Administration,

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff Francene Lorraine Trujillo's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 26), and Ms. Trujillo's *Memorandum of Law in Support of a Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 27), (collectively the "Motion"), both filed December 14, 2020; Defendant Commissioner Andrew Saul's *Brief in Response to Plaintiff's Motion to Reverse or Remand Administrative Agency Decision and its Supportive Memorandum of Law* (the "Response"), (Doc. 30), filed February 12, 2021; and Ms. Trujillo's *Memorandum of Law in Reply to Defendant's Response* (the "Reply"), (Doc. 31), filed February 24, 2021.

Ms. Trujillo applied for disability insurance benefits and supplemental security income on January 9, 2017, alleging disability beginning June 29, 2016. (Administrative Record "AR" 71-74, 87-88). In her application, Ms. Trujillo claimed she was limited in her ability to work due to headaches, depression, trigeminal neuralgia, and posttraumatic stress disorder ("PTSD"). (AR 71-74, 87-88). Ms. Trujillo's application was denied initially on September 25, 2017, (AR 71-72), and upon reconsideration on

January 3, 2018. (AR 101, 103). Ms. Trujillo requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 18, 2018, before ALJ Cole Gerstner. (AR 10-22).

At the hearing, Ms. Trujillo appeared before ALJ Gerstner with her then-attorney Bradford D. Myler and impartial Vocational Expert ("VE") Wendy P. Klamm. (AR 10). ALJ Gerstner issued his decision on March 19, 2018, finding Ms. Trujillo not disabled at any time between her alleged disability onset date through the date of his decision. (AR 22). Ms. Trujillo then requested review of ALJ Gerstner's decision before the Appeals Council, which was denied on December 27, 2019. (AR 1). Ms. Trujillo now challenges ALJ Gerstner's March 19, 2018 decision denying her claim for disability insurance benefits and supplemental security income. *See* (Doc. 26); (Doc. 27).

In her Motion, Ms. Trujillo argues ALJ Gerstner erred in three respects: (1) he failed to properly assess the opinion of Dr. Marcus Higi, M.D. in determining Ms. Trujillo's mental residual functional capacity ("RFC"); (2) he erred in affording Dr. Higi only "some weight" in determining Ms. Trujillo's physical RFC, and accordingly assessed an arbitrary physical RFC; and (3) in evaluating Mr. Trujillo's subjective complaints, ALJ Gerstner cherry-picked evidence and failed to fully develop Ms. Trujillo's testimony concerning treatment compliance. (Doc. 27 at 1, 16-23).

The Court has reviewed the Motion, the Response, the Reply, and the relevant law. Additionally, the Court has meticulously reviewed the administrative record. Because ALJ Gerstner erred in his consideration of Dr. Higi's opinions, the Court finds Ms. Trujillo's Motion is well-taken and should be **GRANTED**, and this case is **REMANDED** to the Commissioner for further proceedings consistent with this opinion.

**I.      Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Hum. Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). The Commissioner's "failure to apply the correct legal standards, or to show . . . that she has done so, are also grounds for reversal." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) (citing *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for the Commissioner's. *See Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision. *See* 42 U.S.C. § 405(g) (2018). Therefore, when the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision for purposes of judicial review. *Threet v. Barnhart*, 353 F.3d 1185, 1187 (10th Cir. 2003) (citing *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994)).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal*, 331 F.3d at 760 (quoting *Fowler v. Bowen*, 876 F.2d 1451, 1453 (10th Cir.1989)) (internal quotation marks omitted). An

ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118 (quoting *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir.1988)) (internal quotation marks omitted). While the Court may not re-weigh the evidence or try the issues *de novo*, its examination of the record must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citing *Sisco v. United States Dep't of Health and Human Servs.*, 10 F.3d 739, 741 (10th Cir.1993); *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir.1994)). However, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)) (internal quotation marks omitted) (alteration made).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of supplemental security income and disability insurance benefits, a claimant establishes a disability when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In order to determine whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process ("SEP"). *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

At the first four steps of the SEP, the claimant bears the burden of showing (1) she is not engaged in "substantial gainful activity"; (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) her impairment(s) meet or equal one of the "listings" of presumptively disabling impairments found in 20 C.F.R. pt. 404, subpt. P, app. 1.; or (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i-iv); *see also Grogan*, 399 at 1261. If the ALJ determines the claimant cannot engage in past relevant work, the ALJ will proceed to step five of the evaluation. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Grogan*, 399 F.3d at 1261. At step five, the Commissioner bears the burden of showing that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.     Background

In her application, Ms. Trujillo claimed she was limited in her ability to work due to headaches, depression, trigeminal neuralgia, and PTSD. (AR 71-74, 87-88). At step one, ALJ Gerstner determined Ms. Trujillo had not engaged in substantial gainful activity since June 29, 2016, the alleged disability onset date. (AR 13). At step two, ALJ Gerstner found Ms. Trujillo had the severe impairments of degenerative disc disease of the lumbar spine, depressive disorder, fibromyalgia, trigeminal neuralgia, obesity, and status post hysterectomy. (AR 13).

At step three, ALJ Gerstner determined Ms. Trujillo's impairments, solely or in combination, did not meet or equal one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 13). ALJ Gerstner then found Ms. Trujillo had

the RFC to perform "light work." (AR 20). In addition, ALJ Gerstner found Ms. Trujillo was restricted to lifting, carrying, pushing, and pulling up to 20 pounds occasionally and up to 10 pounds frequently. (AR 15). He also found Ms. Trujillo was restricted to sitting, standing, and walking up to six hours, respectively. (AR 15). Further, ALJ Gerstner found Ms. Trujillo was limited to occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, scaffolds, and ropes. (AR 15). He found Ms. Trujillo could occasionally work at unprotected heights, move mechanical parts, and operate a motor vehicle. (AR 15). He found Ms. Trujillo could occasionally work in humidity, wetness, extreme cold, extreme heat, the outdoors, and she could tolerate occasional exposure to dust, odors, fumes, and pulmonary irritants. (AR 15). Finally, with regard to Ms. Trujillo's mental RFC, ALG Gerstner found she could perform greater than simple but less than complex tasks; that her judgment is greater than simple but less than complex; that she could occasionally interact with co-workers, supervisors, and the public; and that she required a routine work setting. (AR 15).

In formulating Ms. Trujillo's RFC, ALJ Gerstner stated he considered her symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical and other evidence, as required by 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p. (AR 16). ALJ Gerstner stated he also considered opinion evidence, consistent with the requirements of 20 C.F.R. § 404.1527. (AR 16). He concluded that while some of Ms. Trujillo's impairments could be expected to cause her alleged symptoms, the intensity, persistence, and limiting effects Ms. Trujillo described were not entirely consistent with the evidence in the record. (AR 18).

6

In evaluating the opinion evidence, ALJ Gerstner afforded "some weight" to the opinion by state agency physicians Craig Billinghurst, M.D., and Sean Neely, M.D., that Ms. Trujillo could "work at a light exertion." (AR 19). However, ALJ Gerstner afforded only "little weight" to the opinion by Drs. Billinghurst and Neely that Ms. Trujillo had no "limitations in addition to her light exertion." (AR 19). Similarly, ALJ Gerstner assigned "little weight" to the opinion of state agency psychologist Cynthia Kampschaefer, Psy.D. that Ms. Trujillo's mental impairments were non-severe, because Ms. Trujillo's "ongoing pain in addition to life stressors have contributed to her depression and anxiety." (AR 19). ALJ Gerstner afforded "some weight" to the opinions of Marcus Higi, M.D., Ms. Trujillo's treating physician, because "the objective medical findings do not wholly support [his] opinion." (AR 19). Finally, ALJ Gerstner afforded "some weight" to the third-party function report submitted by Ms. Trujillo's husband, because "he sees [Ms. Trujillo] on a daily basis and has witnessed her functional abilities." (AR 20).

At step four, ALJ Gerstner found Ms. Trujillo incapable of performing her past relevant work as a teacher's aide, receptionist, or bookkeeper. (AR 20). ALJ Gerstner proceeded to step five, finding Ms. Trujillo to be a "younger individual" who has at least a high school education, and can communicate in English. (AR 20). ALJ Gerstner found, given VE Klamm's testimony and Ms. Trujillo's age, education, work experience, and assessed RFC, that Ms. Trujillo could perform other work as a price marker, router, deli cutter/slicer, document preparer, ticket counter, or surveillance system monitor. (AR 21-22). After finding Ms. Trujillo able to perform other work existing in significant numbers in the national economy, ALJ Gerstner concluded she was "not disabled" as defined by 20 C.F.R. §§ 404.1520(g) and 416.920(g). (AR 22).

7

**IV.     Analysis**

In her Motion, Ms. Trujillo presents three arguments. *See* (Doc. 26); (Doc. 27). First, she contends ALJ Gerstner's analysis of her mental RFC was not supported by substantial evidence, because it failed to sufficiently explain his reasons for affording Dr. Higi's opinion only "some weight," and it failed to specify how stress would limit Ms. Trujillo's mental RFC. (Doc. 27 at 16-18). Second, similarly, Ms. Trujillo argues ALJ Gerstner's physical RFC calculation failed to properly consider Dr. Higi's opinion of Ms. Trujillo's postural and environmental limitations. *Id.* at 22-23. Third, Ms. Trujillo contends ALJ Gerstner cherry-picked evidence and failed to develop her hearing testimony concerning treatment compliance, thus leading him to improperly evaluate her subjective complaints of pain. *Id.* at 19-22. For these reasons, Ms. Trujillo requests that the Court reverse the Commissioner's decision and remand the matter for a new administrative hearing. *Id.* at 24.

In response, the Commissioner maintains ALJ Gerstner properly weighed Dr. Higi's opinion regarding Ms. Trujillo's mental health against the evidence in the record, and that the limitations in her mental RFC were "broadly consistent" with Dr. Higi's limitations. (Doc. 30 at 16). Next, the Commissioner argues that ALJ Gerstner properly assigned "some weight" to Dr. Higi's opinion of Ms. Trujillo's postural and environmental limitations given its inconsistencies with the record. *Id.* at 13-14, 18-19. Finally, the Commissioner contends ALJ Gerstner properly assessed Ms. Trujillo's subjective complaints, noting the inconsistency between those complaints and the evidence in the record, her activity level, and her treatment non-compliance. *Id.* at 8-12. As such, the Commissioner contends Ms. Trujillo's claim for disability was properly denied at the

administrative level. *Id.* at 20.

### A. ALJ Gerstner's Assessment of Dr. Higi's Physical Limitations

Ms. Trujillo first argues ALJ Gerstner failed to properly consider Dr. Higi's opinion of her postural and environmental limitations in determining her physical RFC. (Doc. 27 at 22-23). Specifically, she contends ALJ Gerstner should have afforded Dr. Higi's opinion of her pain symptoms and resultant limitations more than "some weight," as her treating doctor, or "sought clarification from Dr. Higi, a consultative examiner, or . . . another non-examining source before independently calculating [her] limitations." *Id.* at 23.

In response, the Commissioner contends Ms. Trujillo's arguments "about the weight the ALJ gave Dr. Higi's opinions are only a thinly-veiled complaint that the ALJ *could* have—and therefore *should* have—interpreted the evidence differently in order to give greater weight to those opinions." (Doc. 30 at 13 (emphasis in the original)). The Commissioner argues that ALJ Gerstner rightly assessed Dr. Higi "some weight," because Dr. Higi failed to explain the basis or provide any objective medical support for his postural limitations, his postural limitations were "inconsistent with his own near-contemporaneous assessments," his postural limitations conflicted with Ms. Trujillo's non-compliance with treatment, and they conflicted with her husband's statements about her daily activities. *Id.* at 18-19.

Although an ALJ is not required to discuss every piece of evidence, he is required, at a minimum, to evaluate and weigh every medical opinion in the record. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)); *see also* 20 C.F.R. §404.1527(b)-(c); SSR 06-03p,

9

2006 WL 2329939. Every medical source opinion should be weighed by the ALJ in consideration of the following "deference factors": (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §§ 404.1527(c)-(d), 416.927(c)-(d), 416.927(c)-(d).

Ultimately, the ALJ must give good reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" for the weight that they ultimately assign the opinions. *Langley*, 373 F.3d at 1119 (citation omitted). Failure to do so constitutes legal error. *See Kerwin v. Astrue*, 244 Fed. App'x 880, 884 (10th Cir. 2007) (unpublished); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996).

In addition, treating sources are generally entitled to more weight than other sources, given their treatment relationship with the claimant.[1] 20 C.F.R. § 404.1527(d)(2). Accordingly, ALJs must follow a particular two-step process when evaluating and weighing opinions from treating sources. 20 C.F.R. § 404.1527(b); *see Watkins*, 350 F.3d at 1300-01. First, the ALJ must determine whether the treating

---

[1] Social Security regulations related to the evaluation of medical evidence, including the opinions of treating physicians, were amended effective March 27, 2017. Because Ms. Trujillo's application was filed on January 9, 2017, (AR 71), the regulations set forth in § 404.1527 and § 416.927 ("Evaluating opinion evidence for claims filed before March 27, 2017") apply.

10

source's opinions were "well-supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Second, the ALJ must then determine whether those opinions were "consistent with the record as a whole." *Id.* If the treating source's opinions satisfy both criteria, they are entitled to controlling weight. *Id.*

If a treating source's opinions are not entitled to controlling weight, they are still entitled to deference. SSR 96-2p, 1996 WL 374188, at *4. In deciding the weight to afford a treating source's opinion, the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(c)(1-6). The ALJ must "make clear how much weight the [treating source's] opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified . . . for the weight assigned." *Krauser*, 638 F.3d at 1324 (citing *Watkins*, 350 F.3d at 1330); SSR 96-2p, 1996 WL 374188, at *5 (an ALJ must "give good reasons" that are "sufficiently specific to make clear to any subsequent reviewers the weight" she gave to the opinion "and the reasons for that weight"); *but see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (an ALJ is not required to "apply expressly each of the six relevant factors in deciding what weight to give a medical opinion"). Moreover, in rejecting a treating source's opinion, the ALJ "may not make speculative inferences from medical reports" and may not reject the opinion based on her own credibility judgments, speculation, or lay opinion. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). Rather, an ALJ may only reject a treating source's opinion based on outright contradictory medical evidence. *Id.*

An ALJ's reasoning is not sufficiently specific if they merely state an opinion is unsupported by or inconsistent with the medical evidence without further explanation.

11

*Langley*, 373 F.3d at 1122-23; *see also Cagle v. Astrue*, 266 Fed. Appx. 788, 792-793 (10th Cir. 2008) (unpublished). In addition, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted). Instead, an ALJ "must . . . explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184, at *7. Further, the Commissioner may not rationalize the ALJ's decision post hoc, and "[j]udicial review is limited to the reasons stated in the ALJ's decision." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (citation omitted).

   1. Dr. Higi's Opinion

Ms. Trujillo established care with Dr. Higi in July 2017, and for the next year-and-a-half she visited him monthly and several times even bi-weekly. *See generally* (AR 569-869). As her primary care provider, Dr. Higi assessed and treated Ms. Trujillo for fibromyalgia, trigeminal neuralgia, lock joint of the left knee, carpal tunnel syndrome, fatigue, stress, and depression. *See generally* (Doc. 27 at 6-13); (AR 569-869).

On January 18, 2018, Dr. Higi completed a Physical Assessment and a Mental Capacity Assessment. (AR 679-684). In the Physical Assessment, he opined that Ms. Trujillo could do the following: sit and stand for no more than one hour in an eight-hour workday; walk half a city block without rest or significant pain; never lift and carry any amount of weight; grasp, turn, and twist objects with her hands no more than ten percent of an eight-hour workday; use her fingers for fine manipulation no more than ten percent of an eight-hour workday; and reach with her arms no more than ten percent of an eight-hour workday. (AR 679-680).

### 2. ALJ Gerstner's Physical RFC Assessment

In determining Ms. Trujillo's physical RFC, ALJ Gerstner stated he gave "some weight" to Dr. Higi's opinions because, although he was Ms. Trujillo's treating physician, "the objective medical findings do not wholly support [his] opinions." (AR 19). Specifically, ALJ Gerstner found Dr. Higi's opinions were contradicted by his own treatment notes from October and November 2017, in which he "indicated [Ms. Trujillo] does not have difficulty . . . walking or climbing stairs, dressing or bathing, doing errands alone." (AR 19).

ALJ Gerstner further found that Dr. Higi's opinion limiting Ms. Trujillo to "10 percent use of her hands, fingers, and arms in an eight-hour work day" conflicted with statements by Ms. Trujillo's husband that she "uses Facebook and sews everyday." (AR 20). In addition, ALJ Gerstner stated that the record showed there were no signs of carpal tunnel syndrome or ulnar neuropathy, that nerve conductions studies were within normal limits, and that Ms. Trujillo experienced significant relief from therapeutic injections and the application of a brace. (AR 20). Finally, ALJ Gerstner noted Ms. Trujillo was not compliant with her medication and recommended treatments. (AR 19-20).

ALJ Gerstner's RFC determination does not adopt Dr. Higi's findings that Ms. Trujillo can sit and stand for no more than one hour in an eight-hour workday; never lift and carry any amount of weight; grasp, turn, and twist objects with her hands no more than ten percent of an eight-hour workday; use her fingers for fine manipulation no more than ten percent of an eight-hour workday; and reach with her arms no more than ten percent of an eight-hour workday. *Cf.* (AR 19-20) *with* (AR 679-680). As such, ALJ

13

Gerstner was required to adequately explain why he omitted these limitations from his RFC determination. *See* SSR 96-8p, 1996 WL 274184, at *7 (explaining that if an ALJ's RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted).

### a. Walking and Climbing Limitations

First, the Court will address ALJ Gerstner's finding that Dr. Higi's opinion conflicted with his own contemporaneous treatment notes "indicat[ing [Ms. Trujillo] does not have difficulty . . . walking or climbing stairs, dressing or bathing, doing errands alone." (AR 19). Indeed, Ms. Trujillo visited Dr. Higi twice in October 2017 and twice in November 2017—a couple of months before Dr. Higi completed the Physical Assessment. *See generally* (AR 614-656). As ALJ Gerstner explained in his decision, treatment notes from two of those visits contain some findings that arguably differ from the findings in his Physical Assessment. *See* (AR 19); (Doc. 30 at 17-18). However, ALJ Gerstner's consideration of Dr. Higi's opinion is deficient in several respects.

The treatment notes from visits on October 11, 2017, and November 21, 2017, contain a list of apparently pre-printed or pro forma questions. *See* (AR 518, 535). One question asks, for instance, "Does this patient have *serious* difficulty walking or climbing stairs?" (AR 518) (emphasis added). Type-written in the column next to it is the answer "no." (AR 518). ALJ Gerstner's statement that this "indicate[s] that the claimant does not have difficulty in [this] area" mischaracterizes this finding as contradictory. *See, e.g.*, *Bowles v. Saul*, 1: 19-cv-1135 SCY, 2021 WL 200003, *6 (finding the ALJ mischaracterized certain medical opinions when he incorrectly stated they lacked work-related limitations). The finding indicates Ms. Trujillo experienced no *serious* difficulty

walking or climbing stairs rather than no difficulty at all, which does not contradict Dr. Higi's later opinion that Ms. Trujillo can stand and walk for only one hour in an eight-hour workday.

Most importantly, ALJ Gerstner failed to consider other evidence in those very same treatment notes, which support Dr. Higi's physical limitations. Dr. Higi's treatment notes for Ms. Trujillo's October 11, 2017 visit indicate joint pain, joint stiffness, joint swelling, muscle pain, muscle weakness, gait disturbance with a slight limp, and tender points on Ms. Trujillo's upper back, lower back, thighs, and calves. (AR 617). ALJ Gerstner failed to discuss these observations. In treatment notes for Ms. Trujillo's November 21, 2017 visit, Dr. Higi observed that Ms. Trujillo's foot pain was "aggravated by any weight bearing and going up and down stairs." (AR 649). He described Ms. Trujillo's pain as "walking on fire while w[eigh]t bearing." (AR 649). ALJ Gerstner did not discuss these observations either. This evidence appears consistent with Dr. Higi's later opinion of the limits to Ms. Trujillo's ability to stand and walk. *See* (AR 679).

Certainly, ALJs are not required to discuss every piece of evidence. *Clifton*, 79 F.3d at 1009-10. However, because ALJ Gerstner ultimately determined Dr. Higi was not entitled to controlling weight as a treating physician, the treating physician rule required ALJ Gerstner to give good reasons for finding Dr. Higi's walking-and-climbing limitations inconsistent "with the record as a whole." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2006) (requiring ALJs to give good reasons for their findings—reasons that are sufficiently specific to allow for meaningful review). ALJ Gerstner's mischaracterization of certain evidence and his failure to consider other evidence, as discussed above, is legal error

because "in addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he choses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 at 1009.

### b. Finger and Hand Limitations

Next, the Court will address ALJ Gerstner's finding that the record showed there were no signs of carpal tunnel syndrome. (AR 20). The record appears to contain significant evidence that suggests Ms. Trujillo experienced carpal tunnel syndrome. During his first visit with Ms. Trujillo on July 28, 2017, Dr. Higi noted "positive Tennille [sic] sign," and "positive Phalen sign bilaterally affecting fingers [] and [] grip." (AR 573). He diagnosed, among other things, "carpal tunnel syndrome of bilateral upper limbs." (AR 574-575).

On July 31, 2017, Ms. Trujillo was examined by a physical therapist, who noted Ms. Trujillo's wrist pain and difficulty cooking as a result of carpal tunnel syndrome. (AR 471). On August 11, 2017, Dr. Higi reviewed these physical therapy notes. (AR 588). In November and December 2017, Dr. Higi observed worsening swelling in Ms. Trujillo's hands, right hand weakness and tingling, problems dropping objects, and examinations showed "positive Phalen's and Tinel's signs in the right wrist." (AR 649, 780). On December 14, 2017, Dr. Higi administered a "carpal tunnel injection." (AR 784).

Given this evidence, among the evidence of other diagnosed impairments, Dr. Higi opined in his Physical Assessment that Ms. Trujillo was limited to ten percent use of her hands for grasping, turning, and twisting objects within an eight-hour workday and ten percent use of her fingers for fine manipulation in an eight-hour workday. (AR 679). ALJ Gerstner did not adopt these limitations in his RFC determination partly because

"there was no sign [in the record] of carpal tunnel syndrome." (AR 20). Yet, ALJ Gerstner's decision fails to mention any of the evidence discussed above regarding Ms. Trujillo's carpel tunnel syndrome. It is unclear from ALJ Gerstner's decision whether he considered this evidence, and, if so, how he determined it did not support Dr. Higi's opinion about the limitations to Ms. Trujillo's hands and fingers.

Despite the Commissioner's contention otherwise, the Court cannot find substantial evidence in the record of "inconsistent [] contemporaneous and subsequent objective testing, including . . . other arm- and hand-related testing." (Doc. 30). Rather, as explained above, other evidence in the record appears consistent with Dr. Higi's opinion regarding Ms. Trujillo's carpel tunnel syndrome. Dr. Higi performed Phalen's and Tinel's tests on several occasions, and the results were positive for carpal tunnel syndrome. *See supra*, 16-17.

Again, ALJ Gerstner was not required to discuss every piece of evidence, *Clifton*, 79 F.3d at 1009-10, but because he did not afford Dr. Higi controlling weight, he was required to give good reasons for finding Dr. Higi's hand-and-finger limitations inconsistent "with the record as a whole." *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also Fischer-Ross*, 431 F.3d at 734. ALJ Gerstner's findings give a threadbare indication as to why the medical evidence did not support Dr. Higi's diagnosis of carpal tunnel syndrome.

In sum, the Court finds ALJ Gerstner's reasons discussed above for assigning Dr. Higi "some weight" instead of controlling weight are unsupported by substantial evidence. It thus constitutes harmful and reversible error. Therefore, the Court finds that remand is appropriate. Because the Court finds these reasons alone constitute harmful

error mandating remand, the Court will not address the parties' arguments regarding Ms. Trujillo's subjective complaints, her alleged treatment non-compliance, her husband's third-party function report, or any other arguments.

### V.     Conclusion

For the foregoing reasons, the Court finds the ALJ committed harmful legal error when he failed to either discuss evidence relevant to the opinion of Ms. Trujillo's treating physician, why he rejected such evidence, or why he determined that despite conflicting evidence Ms. Trujillo's treating physician was nevertheless not entitled to controlling weight. Because the Court finds this is a harmful error, the Court will not address the parties' remaining arguments.

**IT IS THEREFORE ORDERED** that Ms. Trujillo's *Motion to Reverse or Remand Decision of Administrative Law Judge*, (Doc. 26), is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE